**William H. SMITH, Plaintiff-Appellant,**

v.

**CITY OF CLEVELAND HEIGHTS, et al., Defendants-Appellees.**

No. 84–3099.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 25, 1985.

Decided May 3, 1985.

John H. Burtch, argued, Baker & Hostetler, David R. Kelleher, Columbus, Ohio, for plaintiff-appellant.

Donald K. Barclay, Jules N. Koach, argued, Kathryn Gonser Eloff, Cleveland Heights, Ohio, Avery S. Friedman, Edward G. Kramer, Vincent T. Lombardo, Kenneth J. Kowalski, argued, Cleveland, Ohio, for defendants-appellees.

Before MERRITT and WELLFORD, Circuit Judges, and HILLMAN, District Judge.*

MERRITT, Circuit Judge.

The plaintiff in this housing discrimination action alleges that the racial steering practices of defendants, city of Cleveland Heights and non-profit neighborhood association, Heights Community Congress, violate both his statutory and constitutional rights under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3604, the Thirteenth and Fourteenth Amendments, and §§ 1981, 1982, 1983, 42 U.S.C. The issue on appeal is whether plaintiff Smith, a black resident of the integrated Cleveland Heights community who was not himself steered from the City, has standing to pursue the action. The District Court held that Smith had demonstrated no "actual injury" sufficient to satisfy the requisites of standing, both because Smith had not been steered and because his rights to associate freely with other blacks had not been impaired; the court granted the defendants' motion for summary judgment and dismissed the action. Dist.Ct.Op. at 6–7. We hold that plaintiff satisfied the standing requirements reaffirmed by the Supreme Court in *Allen v. Wright,* —— U.S. ——, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). We, therefore, reverse the judgment of the District Court and remand for further proceedings on the merits.

Cleveland Heights is a racially integrated community covering 8.2 square miles contiguous to and east of Cleveland, Ohio, with a population of approximately 60,000 persons. The racial composition of this population is approximately 75% white and 25% black. Since 1976 the City, allegedly, has developed municipal policies to control the City's racial composition and to maintain the racial percentages at 75% white and 25% black. The City's programs, designed to freeze existing integration by steering white home buyers to the Cleveland Heights housing market and black home buyers away from the area,[1] are incorporated in Resolution 26–1976, which outlines specific means to create incentives for real estate agents to perform the desired steering. Plaintiff Smith alleges that these official municipal programs violate both his statutory rights under the Fair Housing Act and his constitutional rights under the Thirteenth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1982, and 1983.

■ In order to establish his standing to bring this action, Smith must satisfy a three part test. He must show that (1) he has suffered a personal injury, (2) the injury is fairly traceable to the defendant's challenged conduct, and (3) the injury is likely to be redressed by the judicial relief sought. *Allen v. Wright,* 104 S.Ct. at 3325 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)). These three elements comprise the "core constitutional" standing requirements which the Supreme Court has determined are mandated by the "case and controversy" language of Art. III of the Constitution. *Id.*

---

* The Honorable Douglas W. Hillman, Judge of the United States District Court for the Western District of Michigan, sitting by designation.

1. Such policies are often referred to as "benign steering programs." *See* Note, *Benign Steering and Benign Quotas: The Validity of Race-Conscious Government Policies to Promote Residential Integration,* 93 HARV.L.REV. 938 (1980). They are to combat "white flight," which refers to white residents' rapid migration from neighborhoods that become integrated, and "tipping," the point at which the rising percentage of black residents in formerly all-white neighborhoods precipitates rapid and widespread white migration. These steering programs are of relatively recent origin; their constitutionality has yet to be resolved.

Smith alleges injury for standing purposes on two bases. First, Smith argues that the steering policies stigmatize him as an inferior member of the community in which he lives: that by effectively limiting other blacks' access to Cleveland Heights, the municipal policies brand black residents as less desirable than whites. Smith moved into Cleveland Heights in 1974, two years before the City's governing body first passed Resolution 26–1976, and was not himself subject to any steering practices when he purchased his home. Nevertheless, he asserts that he is forced to interact on a daily basis within the Cleveland Heights community under the weight of this imposed badge of inferiority.

Second, Smith asserts that the City's official programs effectively have denied his associational rights. He does not deny that the integrated nature of his community affords him opportunity to associate with other blacks who live there now. He alleges that his associational rights have been impaired, however, by the official manipulation of Cleveland Heights' housing market in the sense that he has been denied the chance to associate freely with other black residents who would have purchased homes in Cleveland Heights but for the steering policies.

We accept Smith's first argument. Smith correctly argues that noneconomic "stigmatic" injury supports standing. *See Heckler v. Mathews*, 465 U.S. ——, 104 S.Ct. 1387, 1395, 79 L.Ed.2d 646 (1984); *Trafficante v. Metropolitan Life Ins.*, 409 U.S. 205, 208, 93 S.Ct. 364, 366, 34 L.Ed.2d 415 (1972). *See also Sierra Club v. Morton*, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972) (noneconomic aesthetic and environmental injuries can support standing). He argues further that his stigmatic injury is linked directly to the racial steering policies of Cleveland Heights and Heights Community Congress, and that the injunction which he seeks would fairly redress his injuries. Under the Supreme Court's interpretation of "core constitutional" standing requirements recently restated as a three-prong test in *Allen v. Wright, supra,* the above

allegations, documented in plaintiff's complaint and the depositions, demonstrate Smith's standing to pursue this action.

We note at the outset of this analysis that standing has been a peculiarly malleable doctrine through the years, expanding or contracting to fit the temper of prevailing judicial philosophy. *See* K. DAVIS, ADMINISTRATIVE LAW TREATISE § 24:1 at 208–11 (1983). The significant fluctuations in the doctrine's boundaries have been the source of criticism. *Id.*

The uncertainty of the doctrine's outer limits does not affect its application here, for the plaintiff alleges facts placing him within the doctrine's confines. First, as to Smith's allegation of stigma, the requirement of actual personal injury is met. The City's policy directly affects Smith's interest in his own self-respect, dignity and individuality as a person in his own town. Smith is a black resident of Cleveland Heights. His city, he claims, has adopted an official policy to deter other members of Smith's race from residing in his community. Smith is therefore a member of a group of people whom the City, regardless of the reason, has characterized as undesirable beyond a certain percentage or number.

■ This process is not color blind and is perceived by Smith as a black person as imposing a badge or label of inferiority on him based purely on race. The City is essentially saying that, although Smith's presence in the community may not be undesirable, the presence of any more members of Smith's race is undesirable. The record supports Smith's claims in this respect. Regardless of the City's status quo position that Smith himself may remain because he is within the desired percentage of black residents, as a black man Smith immutably shares whatever perceived insult or indignity the City's policies pass on to black home buyers in Cleveland Heights. He lives out daily routines and neighborhood interactions as a member of a race which his own City labels as undesirable for purposes of housing policy.

Smith's deposition demonstrates that this policy adds injury to insult, for the black citizen must live on a daily basis with a sense of disrespect officially established as law.

It is true that the City's motive for this unequal treatment may be benign—that is, to ensure stable integration and cultural diversity for the benefit of all Cleveland Heights residents. This factor may be relevant to the merits of the action in, for example, an analysis of the goals of the Fair Housing Act or in a constitutional analysis using a balancing test of individual injury versus state interest. But it is not a relevant factor in deciding the threshold standing issue. *See Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975) (stating that "standing in no way depends on the merits").

The stigma in his own community on which Smith relies is far from the "abstract stigmatic injury" or generalized insult found insufficient for standing purposes in *Allen v. Wright*, 104 S.Ct. at 3327. In *Allen*, plaintiffs were parents of black public school students who challenged IRS standards and procedures for denying tax-exempt status to private schools that discriminated on the basis of race. In this taxpayer standing case, the parents essentially charged that the federal government was not being sufficiently vigilant in enforcing denials of tax-exempt status to racially discriminatory private schools. There was not, as here, an official government policy that directly discriminated on the basis of race in a discrete community.

Justice O'Connor, writing for the Court, emphasized the generality of the plaintiffs' injury and likened the plaintiffs' stigma to one potentially suffered by a resident of Hawaii on the basis of government support of discriminatory schools in Maine. Recognizing standing, she wrote, would mean that it would "extend nationwide to all members of the particular racial groups against which the Government was alleged to be discriminating by its grant of a tax exemption to a racially discriminatory

school, *regardless of the location of that school.*" *Id.* at 3327 (emphasis supplied).

Smith's situation is in sharp contrast. Smith's relationship to the source and situs of his injury is far from attenuated or generalized. The source of his injury is a local governmental policy tailored expressly to shape the racial composition of his community. The situs is the very community in which he lives. These direct and concrete connections demonstrate that Smith's injury is "peculiar to himself or to a distinct group of which he is a part," *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979), and that he is "personally subject to the challenged discrimination." *Allen*, 104 S.Ct. at 3327.

That the locus of Smith's alleged harm is a city rather than an apartment complex or discrete neighborhood within the city by no means defeats Smith's standing. In the analogous context of cases alleging infringement of associational interests under the Fair Housing Act, the Supreme Court has stated that ascertaining an affected area for purposes of defining cognizable injury is a case-by-case proposition and that "genuine injury should be ascertainable on the basis of discrete facts presented at trial." *Gladstone*, 441 U.S. at 114, 99 S.Ct. at 1615. When it is a municipality's city-wide policies that are at issue, rather than those of a private realtor functioning in various areas of a municipality, and when the city is a relatively compact 8.2 square miles with 60,000 residents, the stigmatic injury suffered by its black residents is "distinct and palpable." *Warth v. Seldin*, 422 U.S. at 501, 95 S.Ct. at 2206.

Finally, the language in *Allen v. Wright* that the plaintiff must allege "stigmatic injury suffered as a direct result of having personally been denied equal treatment," 104 S.Ct. at 3327, does not dictate a different result here. That the City's alleged policy denies equal treatment is obvious. It creates a favored class based solely on race. Because a race-conscious policy favoring prospective white residents was applied throughout the City, Smith was per-

sonally denied equal treatment within that City. White residents of Cleveland Heights were not forced to shoulder the burden of belonging to a race disfavored for purposes of their City's housing policies; Smith was required personally and directly to bear this burden. No badge of disrespect follows white residents as they follow their daily routines. The City tells Smith it does not want his friends and relatives, even his children, to enter as homeowners. It says, as he perceives it, "we will tolerate you but want no more like you." White residents do not have to live with that official inscription on the courthouse door. For Smith that inscription written into law over the door of his town is an injury. His sense of community is deeply offended because the doorway to his town is an extension, in a symbolic way, of his own doorway.

The second prong of the standing test is met here, since Smith's stigmatization is "fairly traceable" to the housing policies of the defendants. Defendant City of Cleveland Heights does not deny administering the challenged programs through the Heights Housing Service, an arm of the local government. Defendant Heights Community Congress argues forcefully that none of Smith's alleged injuries are fairly traceable to its conduct, since its contractual relationship with the City is presently limited to activities unrelated to steering and race-conscious housing programs. Smith's complaint alleges that, regardless of any formal contractual arrangement, Heights Community Congress directly participates in steering blacks to areas outside of Cleveland Heights and whites to areas within. The complaint sufficiently establishes Smith's standing to sue the community organization; whether the facts will later sustain the allegations is an issue to be decided on the merits.

The third standing prong is also met, since the injunctive relief sought by Smith would remove the official implementation of the race-conscious programs. Such a removal would erase the source of Smith's stigmatic injury.

The District Court decided the standing issue relative to the Fair Housing Act; our analysis in this case similarly has related to the Article III minimum requirements of injury in fact which the Supreme Court has determined are the sole standing requirements under the Fair Housing Act. *Gladstone*, 441 U.S. at 109, 99 S.Ct. at 1612; *Accord, Havens Realty Co. v. Coleman*, 455 U.S. 363, 372, 102 S.Ct. 1114, 1120, 71 L.Ed.2d 214 (1982). Smith's additional claims of standing relative to his constitutional claims satisfy the Court's prudential limitations in adjudicating cases. *See Warth v. Seldin*, 422 U.S. at 499–501, 95 S.Ct. at 2205–2206. First, prudential limitations have been held to bar a plaintiff who has established constitutional injury in fact from asserting "the legal rights or interests of third parties." *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205 (citations omitted). Such a limitation is irrelevant here, since Smith is asserting his own rights. Second, the Supreme Court has applied prudential principles to limit suits by plaintiffs asserting a " 'generalized grievance' shared in substantially equal measure by all or a large class of citizens." *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205. We are dealing here with a limited and identifiable set of injured citizens—the approximately 15,000 black residents of Cleveland Heights. The grievance asserted is specific and immediate to that contained group. Finally, prudential principles preclude suit unless "those litigants best suited to assert a particular claim" are asserting their rights. *Gladstone*, 441 U.S. at 99, 99 S.Ct. at 1607. Smith is asserting rights as a resident personally and directly stigmatized by his City's race-conscious policies. Given the immediacy of the injury to Smith's dignity and self-respect as a black citizen of Cleveland Heights, he is a suitable plaintiff. He has a stronger interest to sue than a black nonresident homeowner steered elsewhere or a white home buyer invited to move to Cleveland Heights.

Because Smith's stigmatic injury is sufficient to support a finding of standing, we need not decide whether his alleged associational interests would independently sup-

port his standing. Although the merits of this case may prove difficult to resolve, the threshold standing issue before us is quite clear. Plaintiff is not constrained to prove his case on the merits in order to surmount a standing hurdle. *Warth,* 422 U.S. at 500, 95 S.Ct. at 2206. Meeting the three prong test articulated in *Allen v. Wright* suffices to prove standing. Taking the complaint and depositions together, *See Gladstone,* 441 U.S. at 115, 99 S.Ct. at 1615, we find that Smith has demonstrated standing sufficient to maintain the action.

Accordingly, the judgment of the District Court is reversed.

WELLFORD, Circuit Judge, dissenting.

I would affirm the order granting defendants' motion for summary judgment for the reasons stated by District Judge Bell, holding that plaintiff Smith has "not shown an actual injury as required" to establish standing.

Applying the standing criteria set forth above it is clear that Smith has not shown an actual injury as required by *Gladstone Realtors v. Village of Bellwood, supra.* Smith's own statements demonstrate that he was not personally steered away from Cleveland Heights when he purchased housing. In addition, he admits that he has not lost any of the social benefits of interracial living in his neighborhood. Hence, he is prevented from establishing standing from some claimed injury which may or may not occur to other individuals living in the Cleveland Heights area. Therefore, the court concludes that the plaintiff lacks the requisite standing to bring this action.

The allegation of racial steering in Cleveland Heights was also the subject of a suit brought before the Honorable William K. Thomas. *Heights Community Congress v. Hilltop Realty, Inc.,* C79–422 (N.D.Ohio, December 31, 1980). In that action, Judge Thomas had to determine the standing of several individual plaintiffs. The court found that several individual plaintiffs lacked standing be-

cause they failed to demonstrate any actual injury. As with Smith, the individual plaintiffs which lacked standing in *Heights Community Congress v. Hilltop Realty, Inc., supra,* at 24–29, lived in an integrated neighborhood and were not personally deprived of the ability to interact with members of various racial backgrounds.

Order, Jt.App. 36, 37.

This court recently had occasion to consider a similar standing issue in *Jaimes v. Toledo Metropolitan Housing Authority,* 758 F.2d 1086 (6th Cir.1985), a case also involving claims under like provisions of the Fair Housing Act and the Civil Rights Act as here asserted. Because plaintiffs in *Jaimes* had failed to show personal injury in fact (failed to assert a personal stake in the outcome of the controversy), and failed to establish that the injury claimed could be directly attributed to the defendants' actions or that the relief requested would likely redress the general injury claimed, they lacked standing to pursue certain alleged claims of racial discrimination. These same standing requirements apply to plaintiff Smith. *See generally Allstate Insurance Co. v. Wayne County,* 760 F.2d 689 (6th Cir.1985).

The majority first made reference to *Allen v. Wright,* —— U.S. ——, 104 S.Ct. 3315, 82 L.Ed.2d 556, *reh'g denied,* —— U.S. ——, 105 S.Ct. 51, 82 L.Ed.2d 942 (1984), as a basis for holding that plaintiff has standing. That case, however, held that parents of black school children in a broad class action alleging racially discriminatory action by the Internal Revenue Service did *not* have standing to challenge the procedures in question. The complaint in *Allen* was that the actions of the I.R.S. encouraged and supported the expansion of racially segregated private schools at the expense of desegregated public schools and barred their children's opportunity for desegregated education in violation of the Constitution and civil rights laws. The Supreme Court *reversed* the Court of Appeals' holding in *Allen* that plaintiffs' had standing to pursue a claim of injury of

"denigration they suffer as black parents and school children when their government graces with tax-exempt status educational institutions ... that treat members of their race as persons of lesser worth." 656 F.2d 820, 827. It seems to me that Smith's claims here of a stigma by reason of alleged governmental racial steering, which does not directly affect him or his neighborhood, is akin to the plaintiffs' claim in *Allen* of denigration by reason of alleged governmental favoritism of nonsegregated education which did not directly impact upon plaintiffs' public schools.[1] *Allen* is authority for affirmance, then, rather than for reversal.

"[A]ssertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Article III without draining those requirements of meaning."

104 S.Ct. at 3327 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 483, 102 S.Ct. 752, 764, 70 L.Ed.2d 700 (1982)).

The majority opinion cites *Heckler v. Mathews,* — U.S. —, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984), as holding that noneconomic "stigmatic" injury supports standing. It fails to note, however, that the later *Allen* decision makes it clear that such "noneconomic stigmatic" injury provides a basis for standing *"only* to those persons who are *personally* denied equal treatment by the challenged discriminatory conduct." 104 S.Ct. at 3327 (emphasis added). Unlike the plaintiff in *Heckler,*[2] Smith here admits that he was not the subject of the alleged discriminatory steering; he was not personally denied equal treatment insofar as housing is concerned. His claimed stigmatic injury pertains to 'vindication of the value interests of [a] concerned bystander." *See United States v. SCRAP,*

412 U.S. 669, 687, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973). He suffers from an indirect, abstract type of injury caused by reason of the fact that other blacks allegedly were steered away from his city of residence. His deposition testimony indicated that he enjoyed on his block and on his street good "socialization" and interracial "communication." He admitted, in effect, that he *personally* had not been deprived of this "socialization" between blacks and whites in the City of Cleveland Heights. He has not alleged such a *personal stake* in respect to the alleged steering controversy to satisfy standing under the *Warth v. Seldin* analysis, which was reiterated in *Allen.*

*Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), cited also by the majority, involved a Civil Rights Act of 1968, 42 U.S.C. § 3604, claim by two tenants that the owner of a single apartment unit had discriminated against nonwhite rental applicants resulting in a stigmatic type of injury to the plaintiffs as residents. This case seems distinguishable as bearing upon discriminatory acts in one apartment complex; the Court held that plaintiffs had standing "as tenants of the *same housing unit* that is charged with discrimination," 409 U.S. at 209, 93 S.Ct. at 366 (emphasis added), who claimed the personal loss of "interracial associations." 409 U.S. at 210, 93 S.Ct. at 367. Standing in *Trafficante* came only from the plaintiffs' roles as tenants in the same housing unit where alleged racial discrimination existed. The case is therefore not authority to provide standing for Smith who admitted there was no problem with interracial association in his block and on his street in Cleveland Heights.

In addition, the majority cites *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), as supporting

---

1. Justice O'Connor characterizes the plaintiffs claim in *Allen* as a claim of "stigmatic injury." 104 S.Ct. at 3326. She held, however,

    Neither do they have standing to litigate their claims based on the stigmatizing injury often caused by racial discrimination.

104 S.Ct. at 3327.

2. Justice Brennan, author of the unanimous decision in *Heckler v. Mathews,* dissented in *Allen.*

its holding. Again, I see no valid basis in that decision for support of the majority view. That case held that plaintiffs had no standing to complain about governmental action which allegedly would "destroy or adversely affect the scenery, natural and historic objects and wildlife" of a given area, which action would "impair the enjoyment of the park." 405 U.S. at 734, 92 S.Ct. at 1366. Despite the allegation of this "injury in fact," which the court conceded may exist, it held:

> But the "injury in fact" test requires more than an injury to a cognizable interest. It requires that the party seeking review be *himself* among the injured.

405 U.S. at 735, 92 S.Ct. at 1366. (emphasis added). Thus, despite the allegation of harm to its vital environmental interests in the area allegedly harmed, the Supreme Court denied the Sierra Club standing to sue.[3] The Court cited *Sierra Club* as a basis for its "personal stake" standing requirement in *Warth v. Seldin*, 422 U.S. at 500, 95 S.Ct. at 2206.

*Warth v. Seldin* involved a claim of exclusion from a town of a discrete group based on alleged discrimination; but the complaint there, like that of Smith here, involved an allegation that "they [the plaintiffs] have been harmed indirectly by the exclusion of others." 422 U.S. at 514, 95 S.Ct. at 2213. The attempt in this case to "raise putative rights of third parties," allegedly steered from Cleveland Heights, should fail just as the efforts of the plaintiffs in *Warth* failed to meet well-settled standing criteria. *Id.; See also HOPE, Inc. v. County of DuPage*, 738 F.2d 797 (7th Cir.1984) *(en banc )*.

*Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979), also involved a claim under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601–3631. There, two real estate firms and their employees were charged with racial steering in Bellwood, a suburb of Chicago. Four of the individual plaintiffs lived in the "target area" alleged to be the scene of the racial steering, and they claimed that the challenged practices deprived them of "benefits of living in an integrated society." 441 U.S. at 111, 99 S.Ct. at 1613. Reading the complaint to apply only to the "carefully described neighborhood in Bellwood in which four of the individual [plaintiffs] reside," it was held that this was sufficiently close to the situation in *Trafficante* to establish standing, 441 U.S. at 113, 99 S.Ct. at 1615, because it was a "relatively compact neighborhood." *Id.* at 114, 99 S.Ct. at 1615. At the same time, the Court in *Bellwood* recognized that a "neighborhood" may be so "extensive," or "lacking in shared social and commercial intercourse," that there would be no "actual injury to a particular resident." [4] *Id.* Here again, I find that the facts as developed in this case are not comparable to *Trafficante* or *Bellwood* as to confer standing on Smith, who has admitted that the number of blacks with whom he seeks association has increased since the date of the alleged discriminatory actions of Cleveland Heights. Unlike the case in *Bellwood*, plaintiff could not identify any particular act of alleged steering whereby anyone he knew or with whom he wished to associate was directed away even from Cleveland Heights, much less from his block or his street or any compact neighborhood. He did not, furthermore, assert denial of the benefits of interracial association; he complained about alleged interference with his association with more

---

**3.** It should be noted that Justice Brennan, the author of *Heckler v. Mathews*, also dissented in *Sierra Club*.

**4.** In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 377, 102 S.Ct. 1114, 1123, 71 L.Ed.2d 214 (1982), Justice Brennan observed:

> Our cases have upheld standing based on the effects of discrimination only within a relatively compact neighborhood. *Bellwood*, 441 U.S. at 114, 99 S.Ct. at 1615. We have not

suggested that discrimination within a single housing complex might give rise to 'distinct and palpable injury', *Warth v. Seldin*, 422 U.S. at 501, 95 S.Ct. at 2206, throughout a *metropolitan area*. (Emphasis added.)

Cleveland Heights clearly is a metropolitan area in which a party in plaintiff's position would not have standing to assert a claim regarding the city's alleged practices.

black persons. This claim is different from the one made in *Trafficante* or *Bellwood.*[5] *See Munoz-Mendoza v. Pierce,* 711 F.2d 421, 428 (1st Cir.1983).

As in *Allstate Insurance Co. v. Wayne County,* I also find Smith's claim, under the circumstances, to fail for prudential reasons. It is simply too remote and too speculative. For the additional reasons stated, I respectfully dissent from the decision to reverse the judgment of the district court.

---

**5.** In *Bellwood,* the complaint was that defendants' actions were segregating a neighborhood, bringing in more blacks.