The OHIO FAIR HOUSING
CONGRESS, Plaintiff,

v.

Samuel PIERCE, et al., Defendants.

No. C85–2433–A.

United States District Court,
N.D. Ohio, E.D.

April 22, 1986.

R.J. Stidham, Cleveland, Ohio, for plaintiff.

Kenneth L. McLaughlin, William J. Steele, Theresa J. Rittinger, Asst. Atty. Gen., Columbus, Ohio, Elizabeth A. Pugh, U.S. Dept. of Justice, Washington, D.C., and Richard J. French and Emily Sweeney, Asst. U.S. Attys., Cleveland, Ohio, for defendants.

## ORDER

BELL, District Judge.

On August 23, 1985, the plaintiff, the Ohio Fair Housing Congress filed the above-entitled action against Samuel R. Pierce, Secretary of the Department of Housing and Urban Development, Alfred Moran, Assistant Secretary for Community Development, and the United States Department of Housing and Urban Development (hereinafter collectively referred to as the "federal defendants"). Also named as defendants in the complaint were Richard F. Celeste, the Governor of the State of Ohio, and Clarence Palwicki, Director of the State of Ohio Department of Development (hereinafter collectively referred to as the "state defendants"). On February 10, 1986, the plaintiff filed an amended complaint wherein he sued all of the above-named federal and state officials in their individual capacity as well as in their official capacity.

The complaint and amended complaint allege that the plaintiff is a non-profit cor-

poration organized for the expressed purpose of increasing housing opportunities in the State of Ohio for persons discriminated against on the basis of race, religion, national origin, sex or handicap. The plaintiff alleges that the defendants through their operation of the Community Development Block Grant Program (hereinafter CDBG) within the State of Ohio have violated various fair housing laws. This court's jurisdiction is alleged under the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq.;* the Housing and Community Development Act of 1974, 42 U.S.C. § 5304 *et seq.;* Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982; and the Thirteenth and Fourteenth Amendments to the United States Constitution. In addition to monetary damages, the plaintiff seeks injunctive relief against all of the defendants.

Presently before the court are motions to dismiss the complaint and amended complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, filed by all of the defendants. The defendants all contend that the plaintiff lacks the requisite standing to bring this action. In addition, the state defendants also challenge the plaintiff's right to bring a private action under the Housing and Community Development Act of 1974, and further assert that this action would be barred by the Eleventh Amendment to the United States Constitution. The state and federal defendants claim that the allegations against them in their individual capacity should be dismissed since all of the officials named in the action are immune from suit in their individual capacities.

The court must accept as true the allegations of a complaint for purposes of analyzing a motion for dismissal. *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983). To dismiss the complaint against defendant, the court would have to find beyond doubt that plaintiff can prove no set of facts in support of its claim which would justify the relief sought.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Therefore, a summary of the facts as set forth in the complaint and the amended complaint follows.

For at least the four-year period prior to the filing of this action, the State of Ohio has requested and received federal funds under the CDBG program. Pursuant to the Small Cities aspect of this program, the State of Ohio has thereafter distributed these federal funds to various counties and municipalities throughout Ohio through the State's Department of Development. This Small Cities CDBG Program has been monitored by the United States Department of Housing and Urban Development (hereinafter HUD).

On September 12, 1984, the president of the Ohio Fair Housing Congress wrote to the Ohio Department of Development to request an official monitoring report of the Small Cities CDBG program. On January 4, 1985, the plaintiff's president again wrote to the state and advised it that the information which was sent in response to the previous letter from the plaintiff was "inadequate in that it does not reflect compliance with federal regulations." Exhibit B to Amended Complaint. Thereafter, on March 14, 1985, a committee from the plaintiff met with officials of the Ohio Department of Development. At this meeting, the committee requested that the state comply with the applicable federal laws regarding the administration of the Small Cities CDBG program.

On April 5, 1985, a committee from the plaintiff met with officials from HUD. At this meeting the committee requested that HUD require the State of Ohio to comply with the fair housing laws and the Housing and Community Development Act of 1974 regarding the Small Cities CDBG program. Shortly after this meeting the plaintiff, through its president, reiterated this request in writing to the HUD officials.

All during this time period, the plaintiff's position was that the State of Ohio was not in compliance with the federal requirement

for fair housing. The plaintiff contends that the state did not develop an effective plan or program to ensure that the counties and municipalities which are the recipients of the funds from the Small Cities CDBG program complied with the fair housing requirements. The pleadings assert that many of these recipients of Small Cities CDBG funds are not developing fair housing programs which comply with the Housing and Community Development Act. In addition, the plaintiff contends that the state has submitted false reports regarding compliance with the fair housing requirements of the Housing and Community Development Act of 1974.

Each of the individual defendants are officials responsible for the implementation of the Small Cities CDBG program. Richard Celeste, as the duly elected Governor of the State of Ohio, and Clarence Palwicki, as the Director of State of Ohio's Department of Development, are responsible for the administration of the CDBG program within the state. Samuel Pierce, as Secretary of HUD, and Alfred Moran, as the Assistant Secretary for Community Planning, are responsible for monitoring the State of Ohio's performance under the CDBG program.

■ The first issue which must be addressed by this court concerns whether the plaintiff has the necessary standing to bring this action. A federal district court's subject matter jurisdiction is limited by Article III of the United States Constitution to actual cases or controversies. Thus, a plaintiff must show a specific injury to itself that could be redressed by the proper exercise of jurisdiction by an Article III court. Only then will a plaintiff establish sufficient standing under the case or controversy limitation to enable it to bring the action. In *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 37–38, 96 S.Ct. 1917, 1923–1924, 48 L.Ed.2d 450 (1976), the Supreme Court discussed this standing requirement under Article III of the U.S. Constitution as follows:

> No principle is more fundamental to the judiciary's proper role in our system

of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. See *Flast v. Cohen,* 392 U.S. 83, 95 [88 S.Ct. 1942, 1949–1950, 20 L.Ed.2d 947] (1968). The concept of standing is part of this limitation. Unlike other associated doctrines, for example, that which restrains federal courts from deciding political questions, standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Id.* [392 U.S.] at 99 [88 S.Ct. at 1952]. As we reiterated last Term, the standing question in its Art. III aspect "is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin,* 422 U.S. 490, 498–499 [95 S.Ct. 2197, 2204–2205, 45 L.Ed.2d 343] (1975) (emphasis in original). In sum, when a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation. (Footnote omitted.)

■ All of the defendants in this action assert that the plaintiff, as an organization, lacks the specific injury necessary to obtain standing under Art. III. The Supreme Court has defined two separate alternatives in which an association such as the plaintiff may obtain the requisite standing to bring an action under the fair housing statutes. In this regard, Justice Powell has written that

> There is no question that an association *may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.* Moreover, in attempting to secure relief from injury to itself the

association may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties. *E.g., NAACP v. Alabama, supra,* [367 U.S. 449] at 458–460, [78 S.Ct. 1163, 1169–1171, 2 L.Ed.2d 1488 (1958)]; *Anti-Fascist Committee v. McGrath,* 341 U.S. 123, 183–187 [71 S.Ct. 624, 654–657, 95 L.Ed. 817] (1951) (Jackson, J., concurring). With the limited exception of Metro-Act, however, none of the associational petitioners here has asserted injury to itself.

Even in the absence of injury to itself, an association may have standing solely as the representative of its members. *E.g., National Motor Freight Assn. v. United States,* 372 U.S. 246 [83 S.Ct. 688, 9 L.Ed.2d 709] (1963). The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy. See *Sierra Club v. Morton,* 405 U.S. 727 [92 S.Ct. 1361, 31 L.Ed.2d 636] (1972). *The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. Id.,* at 734–741 [92 S.Ct. at 1365–1369]. So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction. (Emphasis added.)

*Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). Thus, in order for the plaintiff as an organization to have requisite standing to bring this action it must either allege that its own rights have been implicated or that its members have suffered some immediate or threatened injury as a result of the defendants' activities. In addition, it is also not sufficient under Article III standing for an organization-plaintiff to only allege that some abstract injury has occurred to the organization or its members. Instead, there must be some allegation that the challenged actions of the defendants have caused the threatened injury in fact. See *Association of Date Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); *Smith v. City of Cleveland Heights,* 760 F.2d 720, 721 (6th Cir.1985).

In this action, the plaintiff asserts that the standing requirements have been met, in that the organization has standing in its own right. Specifically, the plaintiff relies upon the holding in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), wherein the Supreme Court found that an organization whose purpose was to make equal opportunity in housing a reality in Richmond, Virginia, had established sufficient standing to bring an action for damages against an apartment complex owner who allegedly engaged in racial steering. The damages alleged by the plaintiff in its complaint in *Havens Realty* was that the steering practices of Havens had frustrated the organization's counseling and referral services, with a consequent drain on its resources in order to identify and counteract the discriminatory practices. *Id.* 455 U.S. at 379, 102 S.Ct. at 1124. In determining that the plaintiff has established the requisite injury for standing the Supreme Court stated as follows:

If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests, see *Sierra Club v. Morton,* 405 U.S. at 739 [92 S.Ct. at 1368]. We therefore conclude, as did the Court of Ap-

peals, that in view of HOME's allegations of injury it was improper for the District Court to dismiss for lack of standing the claims of the organization in its own right. (Footnotes omitted.)

*Havens Realty Corp. v. Coleman,* 455 U.S. at 379, 102 S.Ct. at 1124.

The injury to the plaintiff in *Havens Realty* was alleged to be a result of the racial steering practice of the defendant-realty company. Although the plaintiff in this action has patterned its complaint after the allegation of injury in *Havens Realty,* there has been no allegation that the alleged injury was a result of some racial practice of the defendants. Instead, the pleadings allege that the plaintiff has been denied the benefits of the fair housing laws because the defendants have failed to enforce compliance with the law. This is not the injury, in fact, to the organization as defined in *Havens Realty,* but is simply a setback or hindrance to the abstract goals and interests of the organization. *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972). Therefore, there is no organizational standing as required by Article III.

In other words, the frustration and the resulting drain on financial resources experienced by the Havens' plaintiff was caused by the unlawful racial activities of the defendant realty company. The frustration and resulting drain on the financial resources of the plaintiff alleged in this action was not alleged to have been caused by the named defendants. The plaintiff's injury complained of has been caused by the unlawful racial practices of unnamed non-parties and is not argued to have been "fairly traceable to the defendants' alleged conduct." *Smith v. City of Cleveland Heights, supra* at 721. The allegation that the defendants have failed to enforce compliance with the law is not an immediate or threatened injury to the plaintiff organization as required under Article III. *Allen v.*

*Wright,* 468 U.S. 737, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556, 571 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 483, 102 S.Ct. 752, 764, 70 L.Ed.2d 700 (1982); *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

The next issue before this court involves whether the plaintiff as a private organization can satisfy Article III standing requirements and maintain this cause of action to challenge the awarding of grants under the CDBG on behalf of its individual members. A review of the pleadings filed by the plaintiff reveals that there has been no allegation concerning any immediate or threatened injury sustained by any member of the plaintiff organization which was caused by the defendants. Hence, the plaintiff has not established standing as the representative of its members. *Warth v. Seldin, supra* 422 U.S. at 511, 95 S.Ct. at 2211.

Having found that the plaintiff organization lacks the necessary standing under Article III to bring an action against the federal and state governments and their officials for compliance with fair housing laws, this court lacks jurisdiction over the remaining issues presented by the defendants. To determine the issues involving Eleventh Amendment immunity and whether a private cause of action could ever exist to challenge the CDBG grants made under 42 U.S.C. § 5304 would overreach the authority of a federal district court under Article III of the Constitution.

Accordingly, the motions to dismiss filed by all of the defendants are hereby granted and this cause of action is dismissed.

IT IS SO ORDERED.